IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
950 Pennsylvania Avenue NW,
Washington, D.C. 20530

Plaintiff,

v.

MELINE B. LE LIEVRE,
Avenue Jean-Jacques Rousseau 5,
Neuchatel 2000,
Switzerland

Defendant.

Case No. 1:25-cv-156

**COMPLAINT**

The United States of America, at the request and with the authorization of a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, brings this action to collect the civil penalties assessed against Defendant Meline B. Le Lievre under 31 U.S.C. § 5321 for her willful failure to report her interest in foreign bank accounts during the 2012 calendar year. In support of this action, the United States alleges as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355(a) because it arises under a federal statute, the United States is the plaintiff, and the action seeks to recover civil penalties assessed under 31 U.S.C. § 5321(a)(5).

2. Venue properly lies in this district under 28 U.S.C. § 1391(c)(3) because, upon information and belief, Defendant Meline B. Le Lievre does not currently reside in the United States.

**Parties**

3. Plaintiff is the United States of America.

4. Meline B. Le Lievre ("Ms. Le Lievre") is a party to this suit because she incurred, but failed to pay, civil monetary penalties assessed under 31 U.S.C. § 5321(a)(5). At all times relevant to this matter, Ms. Le Lievre was a United States citizen and remains a United States citizen. Upon information and belief, Ms. Le Lievre currently resides in Switzerland.

**Regulatory Background**

5. United States citizens and residents are required to report their interests in foreign financial accounts to the Internal Revenue Service ("IRS"). Under 31 U.S.C. § 5314, the Secretary of the Treasury must implement regulations specifying the nature and form of such reporting. Under the regulations implementing the statute, 31 C.F.R. § 1010.350(a), "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" for each year in which such relationship exists.

6. To fulfill this requirement, a United States person must file a Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR," with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year. The FBAR for the 2012 calendar year was due no later than June 30, 2013. 31 C.F.R. § 1010.306(c).

7. In addition, all persons who are required to file a Schedule B to their federal income tax returns (Forms 1040) are required to disclose whether, at any time during that tax year, they had a financial interest in or signatory authority over a financial account located in a foreign country.

8. Under 31 U.S.C. § 5321(a)(5), the Secretary may impose civil penalties for violating the requirements of Section 5314. In the case of a willful violation, section 5321(a)(5)(C) provides that the maximum penalty is the greater of $100,000 or 50% of the balance in the account at the time of the violation.

9. The penalty provided by 31 U.S.C. § 5321(a)(5) is subject to interest and further penalties under 31 U.S.C. § 3717.

**Ms. Le Lievre's Interest in Foreign Financial Accounts**

10. In 1991, Lucien Le Lievre ("Mr. Le Lievre"), Ms. Le Lievre's husband, was contacted by a Swiss resident holding a Swiss bank account with over a million dollars for the benefit of Mr. Le Lievre. Mr. Le Lievre transferred the funds from the Swiss bank account to Banque Populaire in Switzerland.

11. In 1993, Banque Populaire became Credit Suisse and Mr. Le Lievre transferred the funds to Bank Edmond de Rothschild ("Rothschild"). At Rothschild's recommendation, two entities were formed to hold the funds: Jaerog Anstalt and Namatjira Stiftung, both organized in Liechtenstein.

12. Beginning in 2004, approximately $50,000 was withdrawn annually from the accounts at Rothschild to assist with Mr. and Ms. Le Lievre's living expenses.

13. In 2006, Mr. and Ms. Le Lievre moved to Neuchatel, Switzerland. They chose to move the funds from Rothschild to Banque Bonhote ("Banhote").

14. In April 2008, Mr. Le Lievre died.

15. At Bonhote's recommendation, a new structure was used to hold the funds: Fontvielle Holdings, a limited liability corporation, and The Althea Settlement, a trust which

owned Fontvielle Holdings. Both were organized in the British Virgin Islands in 2009. Fontvielle Holdings was listed as the owner of Bonhote accounts XXX742.0 and XXX 742.1.

16. In 2010, Jaerog Anstalt and Namatjira Stiftung were dissolved and the funds were moved to Fontvielle Holdings.

17. During the 2012 calendar year, Ms. Le Lievre had a financial interest in, signature authority over, and/or otherwise controlled Bonhote accounts XXX742.0 and XXX 742.1.

18. In addition to the accounts which listed Fontvielle Holdings as the owner, Ms. Le Lieve has had at least three personal accounts with Bonhote. In 2012, Ms. Le Lieve was the owner of Bonhote accounts XXX787.0, XXX787.1 and XXX774.0. Ms. Le Lievre has a financial interest in, signature authority over, and/or otherwise controlled Bonhote accounts XX787.0, XXX787.1 and XXX774.0.

**Ms. Le Lievre Was Required to Report Her Interest in All Foreign Financial Accounts and Willfully Failed to Do So**

19. During the 2012 calendar year, Ms. Le Lievre had a financial interest in, signature authority over, and/or otherwise controlled financial accounts outside of the United States. The aggregate balance of these financial accounts exceeded $10,000 in 2012.

20. Ms. Le Lievre was aware of or was willfully blind to her obligation to file an FBAR with the IRS that disclosed all of her foreign financial accounts in 2012.

21. Ms. Le Lievre has had the same United States tax preparer, Alan Ozarow, since the late 1970s. Each year, Mr. Ozarow would send an annual organizer for tax preparation. The organizer asked about "foreign matters."

22. However, Ms. Le Lievre failed to inform Mr. Ozarow of all of her foreign accounts. Prior to 2008, Ms. Le Lievre's husband primarily handled the couple's tax matters. In the annual organizer provided by Mr. Ozarow, Mr. Le Lievre would disclose only some of the

accounts that the couple held in Europe. FBARs would be filed reporting those accounts disclosed by Mr. Le Lievre. After Mr. Le Lievre's death in 2008, Ms. Le Lievre continued the same practice of only disclosing some of her foreign financial accounts to Mr. Ozarow.

23. On her 2012 federal income tax return (Form 1040), Ms. Le Lievre answered "yes" to the question on Schedule B of whether she had a financial interest in or signatory authority over a financial account located in a foreign country.

24. Ms. Le Lievre was required to file an FBAR reporting her financial interest in all foreign financial accounts for the 2012 calendar year on or before June 30, 2013. In 2012, Ms. Le Lievre filed a timely FBAR reporting a Merrill Lynch brokerage account with a $3,500,000.00 balance and the Bonhote account XX787.0 with a $20,000.00 balance.

25. However, Ms. Le Lievre failed to report the four additional accounts at Bonhote that she had a financial interest in, signature authority over, and/or otherwise controlled. The high balance for the foreign financial accounts at Bonhote in 2012 that Ms. Le Lievre failed to disclose were, at a minimum, as follows:

| **Account** | **High Balance (USD)** |
|---|---:|
| Bonhote xxx774.0 | $208,047 |
| Bonhote XXX 742.0 | $9,402.036 |
| Bonhote XXX742.1 | $3,206,659 |
| Bonhote XXX787.1 | $652 |
| Total | $12,817,394 |

**COUNT I: REDUCE WILLFUL FBAR PENALTIES TO JUDGMENT**

26. The United States repeats and realleges paragraphs 1 through 25.

27. The IRS notified Ms. Le Lievre by letter dated December 13, 3021, that it was proposing a willful FBAR penalty of $6,404,674 against her for violating the FBAR requirements for the four unreported Bonhote accounts.

28. On January 24, 2023, the IRS assessed Ms. Le Lievre penalties totaling $6,404,674 for the 2012 tax year pursuant to 31 U.S.C. § 5321(a)(5)(C), due to her willful failure to report the four Bonhote accounts.

29. By letter dated January 25, 2023, the IRS notified Ms. Le Lievre of the assessments and demanded payment.

30. Despite notice and demand for payment, Ms. Le Lievre has failed to pay the full amount of the penalties assessed against her under 31 U.S.C. § 5321(a)(5)(C).

31. Interest and penalties have accrued and will continue to accrue on the penalty described above pursuant to 31 U.S.C. § 3717 until it is paid in full.

32. As of February 16, 2024, Ms. Le Lievre is indebted to the United States in the amount of $6,871,425.59, plus statutory additions that continue to accrue thereafter as provided by law.

**WHEREFORE**, the United States respectfully requests that the Court:

A. Find that Ms. Le Lievre willfully failed to file a complete and accurate FBAR for the 2012 calendar year as required by law;

B. Enter judgment in favor of the United States and against Ms. Le Lievre in the amount of $6,871,425.59 for the penalty assessed against her under 31 U.S.C. § 5321(a)(5), accrued interest on such penalty, late payment penalties, and further statutory additions thereon as allowed by law from February 16, 2024, to the date of payment.

C. Award the United States its costs incurred in connection with this action, along with such other relief as justice requires.

Date: January 17, 2025.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

/s/ Kristina M. Portner__________
KRISTINA M. PORTNER
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: (202) 514-0451
Fax: (202) 514-6866
Kristina.M.Pornter@usdoj.gov

*Counsel for the United States*